**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46862**

| | |
|---|---|
| In the Interest of:  John Doe I, John Doe II, and Jane Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) ) ) |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) |
| | ) **Filed:  June 5, 2019** |
| Petitioner-Respondent, | ) ) **Karel A. Lehrman, Clerk** |
| | ) |
| v. | ) **THIS IS AN UNPUBLISHED** |
| | ) **OPINION AND SHALL NOT** |
| JOHN DOE (2019-08), | ) **BE CITED AS AUTHORITY** |
| | ) |
| Respondent-Appellant. | ) ) |

Appeal from the Magistrate Division of District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Andrew Ellis, Magistrate.

Judgment terminating parental rights, affirmed.

Theresa A. Martin, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Madison M. Miles, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

John Doe (2019-08) appeals from the judgment terminating his parental rights.  For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe's youngest child was born in April 2017.  Police removed the child from the hospital and she was placed into foster care after it was determined that she and her mother tested positive for methamphetamine and opiates at the time of the child's birth.  Doe's other two

1

children were also moved into foster care at a subsequent shelter care hearing. Temporary custody of all three children was awarded to the Idaho Department of Health and Welfare. The magistrate approved case plans for Doe and the children's mother and conducted several review hearings while the children were in the Department's custody. Ultimately, the State filed a petition to terminate the parental rights of both parents. The mother voluntarily consented to termination of her parental rights while Doe's case proceeded to trial. Following trial, the magistrate terminated Doe's rights after finding clear and convincing evidence that Doe had neglected the children and that termination is in the children's best interests. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). In a termination proceeding, due process and the substantial evidence test requires the trial court's findings be supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006); *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600. The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order terminating parental rights. *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65.

## III.

## ANALYSIS

Doe challenges the magistrate's decision terminating his parental rights, contending there was not substantial and competent evidence from which the magistrate could find that Doe neglected his children or that termination is in the best interests of the children. The State responds that the evidence was sufficient and that the magistrate's termination decision was correct. We affirm the magistrate's decision.

## A.    Statutory Basis for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period and the inability to do so will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

The magistrate found, by clear and convincing evidence, one statutory ground for termination--neglect.[1] Idaho Code Section 16-1602(31)(a) provides that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for the child's well-being because of the conduct or omission of his or her parents, or their neglect or refusal to provide them. Neglect also includes situations where the parent has failed to comply with the court's orders or the case plan in a child protection case, the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months, and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

After the underlying child protection action was filed, Doe and the children's mother admitted that they had used heroin intravenously in their home, but denied using drugs in front of

---

[1]      The State also alleged termination was appropriate based on abandonment by Doe. The magistrate dismissed this allegation because it determined that its finding of neglect was a sufficient basis to terminate Doe's parental rights.

the children. Doe's case plan included the following tasks: (1) take a GAIN substance abuse assessment and follow all recommendations and comply with random drug and alcohol testing; (2) ensure household income is able to meet the basic needs of the children, ensure a safe and stable environment, provide and maintain current address contact with the Department, and allow home visits by the Department and guardian ad litem; (3) participate in addressing and meeting the children's basic needs including medical, dental, developmental, and emotional care as well as food and clothing; (4) have regular contact with the children through face-to-face visitation, cards, letters and phone calls, and work with the Department to develop a visitation plan; and (5) participate in parenting education classes. The magistrate found that, over all, Doe failed to comply with his court-ordered case plan. The magistrate made the following findings in support of this conclusion.

First, although Doe completed the GAIN evaluation, he failed to follow through with the treatment recommendations, which included participation in group meetings three times a week and a urinalysis test twice a week. Doe was discharged from the substance abuse program for failing to participate. Doe admitted that he did not participate in substance abuse treatment between June 2017 and August 2018 because the children's mother was making progress on her case plan and it appeared that the children would be reunited with her. Doe planned that, once the children were returned to their mother, the child protection case would be closed and she and Doe would reunite after the Department and the judicial system "were no longer involved in their lives." However, the mother overdosed in August 2018. At that time, Doe claimed he completed another GAIN assessment in the state of Washington and began treatment, but was subsequently discharged from that treatment program after he was arrested for possession of heroin. The magistrate found that Doe's short engagement with substance abuse treatment was "insufficient" to "adequately address his profound history of substance abuse and ongoing addiction to opiates."

Second, within a few months of the children being removed from the home, Doe moved to Boise from Mountain Home and began working at a job in Ontario, Oregon. This job and the job following it were short-lived and Doe was unemployed from October 2017 until May 2018 at which time Doe moved to Washington. In Washington, Doe reported he had two or three jobs between May 2018 and January 2019 when he started a new seasonal job in Kennewick,

4

Washington. Doe did not provide verification of his employment to the Department or the court. After Doe moved to Washington, the Department attempted to submit an Interstate Compact for Placement of Children request to have a home study at Doe's home, but he refused to provide an address and other information necessary to complete the request. Doe's most recent residence was obtained only two days before the termination trial. Based on the evidence presented, the magistrate found that Doe failed to maintain stable income or stable housing.

Third, since the time the children were placed into foster care, Doe did not participate in any medical, dental, or developmental appointments for any of the children. During that same period, Doe provided no financial support for the children. Accordingly, the magistrate found that Doe failed to satisfy the case plan requirement that he participate in addressing and meeting the children's basic needs.

Fourth, although Doe had frequent in-person visits with the children during the first six months they were in foster care, the visits became more sporadic after September 2017. When Doe moved to Washington in May 2018, he maintained almost daily contact with the children through telephone calls and videoconferencing. Those interactions mainly involved Doe talking while the children listened, but the children had difficulty maintaining their attention. Since May 2018, Doe saw the two youngest children only twice and the oldest child only three times. On one of the visits with all three children, Doe left thirty minutes early so he could return to Washington. Doe's in-person visitation was limited despite the Department's offer to provide assistance in the form of gas and hotel vouchers to help defray the costs, which Doe declined to take advantage of.

Fifth, Doe did not participate in any parenting education classes. Thus, he failed to complete that requirement of his case plan.

Doe asserts that the magistrate failed to "take into account" the testimony regarding Doe's progress on the tasks in his case plan. Specifically, Doe argues that he testified he was "free of illegal substances," completed treatment and continues to participate in relapse prevention, has a safe home and sufficient employment, and he maintained visitation as his "schedule allow[ed]." Doe further argues that he is "bonded to his children and the two older children are bonded to him."

5

Doe does not dispute that the children had been in the Department's custody for approximately twenty-one months at the time of the termination trial, which is beyond the statutory goal of achieving reunification within fifteen months. Doe also does not dispute the magistrate's finding that Doe had a "consistent pattern of inaction throughout the twenty-one (21) months of the Child Protection case," which the magistrate found was attributable to Doe's plan to "'con' the system" by relying on the children's mother to "successfully reunify with the children and then resume as a family once the Child Protection case was concluded." While Doe did make some efforts relating to the tasks in his case plan, which the magistrate acknowledged, there was substantial and competent evidence to support the magistrate's finding of neglect, and Doe has failed to show error in this finding.

**B.  Best Interests of the Child**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate found it is in the children's best interests to terminate Doe's parental rights in light of his substance abuse history, unstable housing, sporadic employment, and lack of involvement in the children's lives. The magistrate noted that, rather than demonstrating a commitment to being a full-time parent of his children, Doe moved to Washington, making it more difficult for him to maintain regular personal contact with the children. Doe instead "prioritized his activities in Washington over taking advantage of [the Department's] offer to pay for his gas and lodging to visit his children more frequently." Moreover, Doe did not participate or express interest in the educational or medical needs of his children. The magistrate

6

recognized that termination would be "emotionally painful" for Doe's oldest child who had spent the first five years of his life with his mother and Doe; however, the magistrate concluded that the long-term benefits of being adopted by a safe and secure family far outweighed the trauma termination would cause. Regarding the two other children, the magistrate found the bond was superficial between Doe and the middle child and was nonexistent as to the youngest child who had spent her entire life in foster care. Importantly, the children thrived in foster care, including the oldest child who became more involved in school and interactive with his peers. The magistrate found by clear and convincing evidence that termination is in the best interests of the children and that returning them to Doe "would surely place them back in a home environment marked with housing and financial instability and exposure to ongoing and untreated substance abuse."

Doe argues that the magistrate erred in finding that termination is in the best interests of the children because of the bond between him and the two oldest children and because he had expressed concern for the children's emotional well-being and had assisted the children with eating and by changing diapers. In its best interests analysis, the magistrate acknowledged and addressed Doe's bond with his children and expressly noted it did not question that Doe "loves his children deeply." However, neither Doe's bond with his children nor his interactions with the children demonstrate there was insufficient evidence to support the magistrate's decision that termination is in the children's best interests. Any intent Doe may have had to comply with the case plan and reunify with the children does not overcome his failure to address his drug addiction; his failure to meaningfully participate in the case plan; or his failure to demonstrate an ability to maintain stable housing, employment, or parent the children on a day-to-day basis. Doe has not shown error in the magistrate's finding that termination is in the children's best interests.

## IV.

## CONCLUSION

There was clear and convincing evidence that Doe neglected the children and that it is in the best interests of the children for Doe's parental rights to be terminated. Accordingly, the magistrate's judgment terminating Doe's parental rights is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.

7